LITTLE
ROOK,
Jan'y 1839

LYON
vs.
EVANS
& Others

GOV. FOR USE OF LYON, ADM. *against* LEWIS EVANS AND OTHERS.

ERROR *to Washington Circuit Court.*

All bills of exceptions must be tendered at the trial—not that they need be drawn up in form, but the substance must be reduced to writing, while the thing is transacting.

A bill of exceptions can only be considered part of the record, when it contains in itself intrinsic evidence that the exception was taken and reserved while the thing was transacting, or the matter excepted to was passing before the court; and that it was reduced to form and signed by the judge or judges presiding, at some time during the term.

Facts not excepted to when they are transacting in the court, or not properly before the court at the time the exception is taken, or over which the court has no control at the time, although incorporated into the bill of exceptions, cannot be regarded as legally comprising part thereof, or as composing any part of the record of the court, and consequently are not entitled by law to any credit, as facts appearing of record in the cause.

The plea of *ne unques administrator* is a plea in bar.

But if it begin and conclude in abatement, it will be considered as a plea in abatement.

The established rule in England now is, that when a suit is brought by an executor or administrator as such, and the money when recovered would be assets, counts may be joined upon causes of action accruing to the testator or intestate in his lifetime, and to the executor or administrator after death.

But in such cases it must be stated that the cause of action accrued to the plaintiff as " *as* executor" or " *as* administrator."

The act of 1831, with regard to the actions on bonds, &c. for a penalty, is substantially the same in most respects, with *St.* 8 & 9, *Wm.* 3, *ch.* 11, *sec.* 8; and the provisions thereof are compulsory on the plaintiff to assign or suggest breaches. If they are not assigned, in cases within the Statute, the plaintiff cannot recover; and unless the condition and breach appear on the record, the proceedings will be erroneous.

Where Statutory bonds are payable to the Governor, in his official character, he holds the legal interest therein, merely as a naked trust; and in suits upon such bonds, the persons for whose use such suits are prosecuted are regarded as the real plaintiffs in the case.

The breaches assigned in such cases must, therefore, have all the essential requisites of so many different counts in the same declaration, whether they are assigned in the declaration, or in the replication, or appear on the record; and they are subject to the same rule as to the joinder of different and distinct rights and causes of action, as are applicable to such joinder in different Acounts, or a single count of a declaration.

A misjoinder of causes of action which cannot be joined, in different breaches in such suits, cannot be aided by entering a nol. pros. after demurrer, and is fatal on general demurrer, in arrest of judgment or on error.

Where, therefore, in the first breach a cause of action is assigned which accrued to plaintiff's intestate in his lifetime; in the second breach the defendant is charged, as Sheriff, with permitting a prisoner to escape, after the death of the intestate; but where in the third breach it is merely alleged that the plaintiff administrator of P. H. recovered judgment; and does not show that such judgment was recovered by him *as* administrator, or that it was founded on any debt or duty to the intestate, or any liability which had accrued to the plaintiff *as* administrator, this must be considered as setting

LITTLE
ROCK;
Jan'y 1839

LYON
*vs.*
EVANS
& OTHERS.

forth a cause of action belonging to the plaintiff in his private, individual right; and there is, therefore, a misjoinder of breaches, which is fatal.

The plea of *ne unques adm.* is, therefore, no answer to the third breach, and as it claims to answer the whole declaration, it is invalid as to any part thereof: But the plaintiff having, after his demurrer to that plea was overruled, replied to the plea, and tendered an issue thereon, he is now precluded from assigning the judgment on the demurrer as error, as he waived his demurrer by replying.

But the issue upon the plea is immaterial—because a finding upon it would not determine the right to recover on the third breach—and therefore judgment on a verdict upon the issue to the plea of ne unques adm. is erroneous, and must be reversed.

And although the plaintiff committed the first error, by the misjoinder of breaches in his declaration; yet, as no objection was made to the declaration by the defendants, and as the defendants were permitted to file an amended plea in abatement after pleas in bar had been filed and demurrer to one of them overruled, which plea in abatement the plaintiff might have treated as a nullity, but was precluded by the decision of the court below ; and as all the pleas in law were permitted to be withdrawn, which left no valid defence in the case—for these reasons, and under the Statute of 1807, which authorises a repleader after arrest of judgment, this judgment is not affirmed; but a repleader is awarded, to commence with the declaration.

This is not a case, in which the proceedings on the part of the plaintiff are so entirely defective and erroneous, that the judgment against him would not bar another action properly brought for the same cause.

The facts of this case are so fully stated in the opinion of the court, that it is unnecessary here to repeat them, and the reader, therefore, is referred to the opinion.

FOWLER, for the plaintiff in error:

The plaintiff contends,

1st. That a plea in abatement must be filed within the *four first days* of the return term, or it is a *nullity.* In this case it was filed on the TENTH day. *Arch. Pr. p.* 1, *et seq.* 1 *ch. p.* 489, 490.

2ndly. That any plea or defence to the merits of the case—even a prayer of oyer—*precludes* a defendant from pleading *afterwards* in abatement. 1 *Ch. Pl.* 471 *et seq.;* 474 *et seq.*

3rdly. Where pleas *in abatement* and *in bar* are filed together, and at the same time, the pleas in *abatement* are, and must be treated as, *nullities*—the pleas in bar being a legal *waiver* of the right to plead in abatement. Defendants could not plead both at the same time.—1 *Ch. Pl.* 491.

4thly. A plea in abatement, if imperfect or void, cannot be amended; and even if amendable, the amendment in this case was made *after* pleas in bar had been filed, and could only be considered a plea from the time it was made perfect by amendment; consequently it was precluded by the pleas to the merits. 1 *Ch. Pl.* 500; *Tidd. Pr.* 638.

5thly. A plea in abatement, filed without affidavit, is void, and can-

LITTLE ROCK,
Jan'y 1839

LYON
vs.
EVANS
& OTHERS

not be amended. *Pope, Steele, McCampbell's Dig.* 321; 1 *Ch. Pl.* 500.

6thly. The plea in abatement was insufficient, extending to the whole, when it ought to have extended only to a part of the declaration, and the demurrer thereto ought to have been sustained. 1 *Ch. Pl.* 493.

7thly. The pleas in bar could not be withdrawn, to be let in or sustain a plea in abatement. They were *not nullities*—the law is precisely the reverse.

8thly. The withdrawal of said pleas in bar, was giving the defendants an undue and illegal advantage, which no court should permit. It was injustice and error.

9thly. The letters offered were competent evidence.

10thly. The judgment offered in evidence, in favor of said *Lyon*, as such administrator, against said Robinson, being the same judgment set out in the declaration, and upon which the action was mainly predicated, as assigned in the third and principal breach, was competent to show said plaintiff's right to sue, and ought to have been permitted to go to the jury. 1 *Saund. Pl. & Ev.* 503 et seq.

11thly. The issue upon which the case was determined, and judgment rendered, was an *immaterial issue*, and the defendants can have no benefit from it. 1 *Ch. Pl.* 691.

On the argument of a demurrer to a plea in abatement, or to a replication thereto, the defendant cannot take any objection to the declaration. 1 *Ch. Pl.* 500, and references there.

WALKER, *contra:*

The plaintiff in error assigns for error that the plea in abatement was filed too late, and that the court erred in overruling the demurrer. Defendant insists that the plea was filed in good time. If filed with other pleas, the court should have disregarded them until this was disposed of. See 1 *Littell*, 4; 5 *Munford*, 1; 1 *Monroe*, 55.

It came too late; the plaintiff should have moved the court to disregard it. See 1 *Ch. Pl.* 491 & 492. By demurring, he waived the time, admitted the facts, but denied the law. The plea was a good plea—if it was not, by replying he waived his right to question the law; for an issue of law and fact cannot exist at the same time.— See 2 *Marshall*, 496; 3 *Marshall*, 613; 1 *Chitty's Pl.* 707.

But if a doubt could arise on this point, still the declaration is defective, and it was the duty of the court to render judgment against

LITTLE ROCK,
Jan'y 1839

LYON
vs.
EVANS
& OTHERS.

him who committed the first error. See 1 *Saunders' Pl. & Ev.* 431; 4 *Bibb*, 27; 4 *Monroe*, 176.

The other positions assumed in error are entirely untenable; for there is nothing in the record which will authorise an investigation of either of them. This court will not, I am sure, decide that the court below erred in rejecting evidence, unless they could see what that evidence was; nor upon the finding of the jury for the same reason. See 4 *Mon.* 42; 1 *Bibb*, 340.

The assignment of error based upon the supposition that the declaration is good in part, is untenable: the demurrer to the plea reaches the whole declaration. See 1 *Chitty*, 525.

The declaration is wholly defective: there is clearly a misjoinder of causes of action. See 1 *Chitty*, 234.

The plea, although called in the pleadings a plea in abatement, is properly a plea in bar. See *Lord Raym.* 1237; 1 *Chitty*, 491.

CUMMINS and PIKE, for the same:

There is some contradiction between the bill of exceptions, and the remainder of the record; but, from both taken together, it may be collected that *four* pleas were filed at the first term, to two of which neither demurrer nor replication was filed—and that in this situation the demurrer to the first plea, *ne unques administrator*, was taken under advisement, and the case continued; another plea also was demurred to, and the demurrer overruled, and that plea also remained unanswered.

At the next term the court below sustained the demurrer to the first plea, treating it as a plea in abatement, and therefore defective, because not sworn to. Yet the want of affidavit, even had it been a plea in abatement, could only be taken advantage of by motion to strike out, or treat the plea as a nullity, was no ground for demurrer, and was waived by demurrer. See 2 *Marsh.* 44, *Patrick* vs. *Conrad, et al.*

The defendants then amended the plea by swearing to it, and the plaintiff demurred to it, as amended. On the argument of this demurrer, the court below decided that it was a plea in abatement, and that while it was pending, all the pleas should be treated as nullities, and permitted the other pleas to be withdrawn. The demurrer was then overruled, and the plaintiff filed his replication to the plea of *ne unques administrator*. The issue thus made was tried by a jury, who found for the defendants, and judgment was rendered accordingly.

In order to determine the questions involved in this case, it is ne-

'cessary, first, to ascertain the character of this plea.   It is called on <span style="float:right">LITTLE ROCK,</span>
the record a plea in abatement, was so treated in the court below, and <span style="float:right">Jan'y 1839</span>
is claimed to be such by the plaintiff here.   The defendants filed it <span style="float:right">LYON</span>
there as a plea in bar, and still contend that it is one.   The plea as <span style="float:right">vs.<br>EVANS</span>
originally filed, commenced and concluded in *bar*, and averred, in <span style="float:right">& OTHERS.</span>
precise technical form, that *Lyon* never was administrator, in manner'
and form, &c.  As amended, it commenced and concluded with praying
judgment of the writ and declaration, but contained the same positive
allegation as before, in the same words.

That *ne unques adm.* is a plea in bar; see 1 *Ch. Pl.* 485; 2 *Maule
& S.* 555—matter which shows that the plaintiff cannot maintain any
action, for the same cause of action, is proper for a plea in bar.  A plea
in abatement should give a better writ or bill.  1 *Ch. Pl.* 445; *Stephen*,
483.   If *Lyon* is not the administrator of Hancock, he can maintain
no action in the premises; nor could the defendant, by pleading that
matter in abatement, by any possibility give him a better bill or writ.

And even where a plea which contains matter in bar, commences
and concludes in abatement, it is considered a plea in bar.  *Ch. Pl.*
446; 2 *Saund.* 209, *n. c.* (1)—1 *Arch.* 304.

A plea in bar is sufficient, which prays judgment generally, and the
court will award the proper, legal consequence.  1 *Lev.* 222, *Pit* vs.
*Knight*; 2 *Lev.* 19, *Barnes* vs. *Gladman*; *Str.* 520, *Curwen* vs. *Fletcher.*
At all events, the want of proper form could only be objected to by
special demurrer.

This being settled, the first, second, and third assignments of error
at once disappear as unfounded in fact.   The fourth assigns for error
the decision of the court below, overruling the demurrer to the amend-
ed plea.

Of this, even if it were error, the plaintiff cannot now avail himself.
It is settled  by adjudications of this court, as well as of others, that
having *replied* to the plea after demurrer overruled, he waived the
demurrer and the decision thereon, and can now take no advantage
thereby.   See *Gage* vs. *Melton*, decided in this court at the July term,
1838.

As to the position that the court below erred in deciding that while
a plea in abatement is pending, all other pleas are to be treated as
nullities, that decision, although it may be wrong, is on an abstract
point, not existing in this case, inasmuch as no plea in abatement was
pending; and *it* does not follow that because it was wrong, therefore

L

LITTLE ROCK, Jan'y 1839

LYON vs. EVANS & OTHERS.

the court erred in permitting the other pleas to be withdrawn. It decided rightly in granting that permission, though perhaps on wrong grounds.

The withdrawal of pleas is always a matter within the sound discretion of the court, and will not be denied, unless it is asked for with intent to harass and vex the plaintiff. 1 *Bibb*, 412, *Rochester* vs. *Dunn*; 2 *Bibb*, 22, *Eastland* vs. *Caldwell*; *Hardin*, 490, *Kennedy* vs. *Terrill*; 2 *J. J. Marsh.* 540, *Robbins* vs. *Treadway.*

In the present case, where the defendant chose to withdraw three grounds of defence, and rest upon one alone, certainly the plaintiff has no right to complain. It is lightening, not increasing his burthen of proof. It is even doubtful whether the pleas had been filed, as required by law, so as to have become a part of the record.

We now arrive at the question, whether the court below erred in refusing to permit the letters of administration, and the judgment offered by the plaintiff, to be read as evidence. Before this court can adjudge the rejection of them to be error, it must appear, first, that they were relevant to the issue, and second, that they corresponded with and sustained the allegations in the declaration.

The issue, and the sole issue was on the replication to the plea of *ne unques adm*. To this issue the letters offered were relevant, if they corresponded with and sustained the declaration, and were duly authenticated. Was this the case? The profert of them in the declaration is as follows: "Granted by the *County Court* of Pope county, A. T. in due form of law, which letters of administration bears date the 18th of October, 1830, and now here to the court shown." The plaintiff has neglected to make the letters exhibited and offered in evidence, a part of the record, and has merely said in his bill of exceptions, that he " offered in evidence the latters of administration granted by the judge of the County Court for Pope county in vacation to the said *A. W. Lyon*; and the defendants objected, because the letters were granted by the judge in vacation." This court is now bound to presume that the court below decided correctly, until the contrary appears. On what grounds did the court below reject the letters?— Perhaps they did not correspond in date, or names, or otherwise, with the profert. Perhaps they were not properly authenticated. Can this court say that they did correspond—that they were properly authenticated? Even upon the point mentioned in the bill of exceptions, the court below decided properly. The profert is of letters granted by

LITTLE ROCK, Jan'y 1839

LYON
vs.
EVANS & OTHERS.

the *County Court.* Letters granted, not by the County Court, but by the *Judge,* in vacation, are offered in evidence. The judge in vacation is not the court; nor had the judge power to grant them in vacation, and they were void. *Dig. p.* 47.

With regard to the rejection of the judgment, the court is equally uninformed. It is not made a part of the record, and is merely described in the bill of exceptions as "the judgment obtained in the Circuit Court of Washington, in favor of *A. W. Lyon,* as administrator of the estate of Peter Hancock, deceased, against George Robinson." What judgment? Did it correspond in date, amount, or any other particular with the judgment mentioned in the declaration? Does this court know on what grounds the court below rejected it? If not, this court cannot decide that there was error in its rejection. Even had it corresponded, it was not relevant to the issue.

There remains but one other point; and that is, that the issue on which the case was tried, was immaterial. By what process of reasoning this conclusion is arrived at, we are ignorant. Most certainly an issue upon a plea in bar, when that plea is properly pleaded and utterly denies that the plaintiff has any interest whatever in the cause of action, or any right to sue therefor, cannot be immaterial. Perhaps the plaintiff considers John Pope, Governor, to be the real, and *Lyon,* adm. only the nominal plaintiff. If not, no reason can be imagined why he should hold the plea to be a plea in abatement, or the issue immaterial. The law is directly the reverse. *Lyon* is the actual plaintiff, responsible for the costs, and subject to the same rules of pleading, as though he had brought an action on the case against *Evans,* in his own official character a administrator, for the same official neglect. Pope, Governor, is but a nominal party. Suppose Pope had ceased to be Governor during the pendency of the suit below, would the suit have abated? Yet such a person as John Pope, Governor, would no longer have existed; and if he had been the real plaintiff, upon his official decease there would have been no plaintiff. Could that fact have been pleaded in abatement, *puis darrein continuance?* If Pope, Governor, was the real plaintiff, how is this suit now proceeding in his name, when he is no longer in existence? See 3 *Lit.* 9, *Thomas* vs. *Thomas.*

RINGO, *Chief Justice,* delivered the opinion of the court:

This is an action of debt commenced by the plaintiff against the defendants in error, in the Circuit Court of Washington county, found-

LITTLE
ROCK,
Jan'y 1839

LYON
vs.
EVANS
& OTHERS.
ed on the official bond of the defendant *Evans*, as sheriff of said county. The plaintiff in his declaration set forth the bond and the condition thereof in *haec verba*, and assigned three several breaches of the condition:    The 1st charges the escape of one George Robinson, out of the custody of said *Evans*, as sheriff of Washington county, in the lifetime of said Hancock, after he had been arrested and held in his custody on a capias ad respondendum issued at the suit of said Hancock, for a subsisting demand for $3000, and only endorsed for bail in that sum.

The 2nd also charges the escape of one George Robinson, out of the custody of said *Evans*, as sheriff of Washington county, after the death of said Hancock, and after he had been arrested and held in his custody, in the lifetime of said Hancock, on a capias ad respondendum, issued at his suit for a debt of $250, and duly endorsed for bail in the sum of $300, and avers the same to have been to the injury of said *Aaron W. Lyon*, as administrator as aforesaid.

And the 3rd alleges the escape of one George Robinson, out of the custody of said *Evans*, as sheriff of Washington county, after he had arrested and taken his body in execution, and held him in his custody, in execution, upon, and by virtue of an execution, duly issued upon a judgment of the Circuit Court of said county, in favor of *A. W. Lyon*, administrator of the estate of Peter Hancock, deceased, against the said George Robinson, for a debt of $271, and $36 64-100 costs—the said debt and costs being wholly unsatisfied to the said *A. W. Lyon, administrator as aforesaid.*

The declaration also contains a general breach as follows: "Yet the said defendants, although often requested to do so, hath not yet paid the said sum of six thousand dollars, above demanded, or any part thereof to the said Peter Hancock in his lifetime, or to *A. W. Lyon*, administrator of said Peter since his death, to whom letters of administration were granted by the county court of Pope county, A. T. in due form of law, which letters of administration bear date the 18th day of October, 1830, and now here to the court shown, the date whereof is the day and year aforesaid; but hath hitherto wholly neglected and refused so to do, and still doth neglect and refuse to pay the same, or any part thereof to the plaintiff, to the damages of the said plaintiff, one thousand dollars, and therefore suit is brought, &c."

At the return term all of the defendants named in the declaration, (except *Estes* who was not served with the process to appear,) appear-

ed, and moved the court to dismiss the suit, and to quash the writ, for a variance between it and the declaration, which motion being sustained by the court, was afterwards set aside, on the application of the plaintiff, and the case reinstated "on the docket:" whereupon the defendants craved oyer of the writing obligatory declared on, and also of the letters of administration set forth in the declaration, but without oyer having been either granted or refused, filed several pleas, to wit:

LITTLE
ROCK,
Jan'y 1839.

LYON
vs
EVANS
& OTHERS

First, "That the said *Aaron W. Lyon* never has been the legal administrator of the goods or chattles, rights or credits, which were of the said Peter Hancock, deceased, in manner, &c.," commencing and concluding in bar of the action.

Second, "That the said *Lewis Evans*, sheriff, as aforesaid, did not permit the said George Robinson to go at large, and escape from his custody in manner," &c.

Third, "That the said *Lewis Evans*, sheriff, as aforesaid, did not take the said George Robinson in execution in manner and form as set forth in the plaintiff's declaration."

Fourth, "*nul tiel record* of the recovery in favor of said *Lyon*, administrator as aforesaid, against said George Robinson, in manner and form, &c."

The first, second, and third of said pleas appear to have been filed together, at the return term of said writ, on the 18th day of June, 1835; but it does not appear from the record at what time the said fourth plea was filed.

In the record of the proceedings of said term is the following entry: "And now on this day came the parties by their attorneys, and the plaintiff demurs to the first and second pleas filed by the defendant, to which the defendant joins issue, and the matters of law arising on said demurrer being argued, it seems to the court that the law is for the plaintiff; therefore, it is considered that the said demurrer be sustained as to the first plea, and overruled as to the second plea."

It also appears that the said first plea to which the demurrer was sustained, was then amended in the commencement and conclusion thereof, so as to give it the form and prayer of a plea in abatement;— containing, however, in form and substance the same defence, interposed by it in the first instance, which being thus amended, an affidavit of the truth thereof, sworn to by the defendant, *Evans*, was endorsed on, or attached to it, and being again filed as amended, was demurred to and the demurrer joined, and the question raised thereby taken under advisement by the court and the case continued.

LITTLE ROCK, Jan'y 1839

LYON vs. EVANS & Others.

The record of the next term states that the demurrer filed at the previous term, was sustained, and the plea again amended and demurred to and the demurrer overruled, and that upon the overruling of the demurrer, *leave was granted to the defendants to* withdraw *all their pleas filed in the case, except the plea in* abatement, to which opinion of the court, granting the leave to withdraw said pleas, the plaintiff, excepted, and tendered his bill of exceptions, which was signed by the judge, and ordered to be made a part of the record. The plaintiff then filed his replication to the plea remaining in the cause, to which issue was joined, and thereupon a verdict and judgment given in favor of the defendants; and the plaintiff has brought the case before this court by a writ of error.

The bill of exceptions, as transcribed in the record, states, "that there were filed, or marked filed by the clerk, three papers, two to the merits, one in abatement, which pleas were filed together at the June term, A. D. 1825, and on the tenth day of the term; which pleas were severally demurred to, and the demurrer sustained to the pleas to the merits of the case, and the plea in abatement was taken under advisement to this term of the court, and the demurrer was sustained by the court, because there was no affidavit to the plea, but the court permitted the defendant to amend his plea in abatement"—"and that there were other pleas to the merits of the case filed at the previous term of this court, and which were not disposed of either by demurrer or replication, and the court permitted the defendants to amend their pleas in abatement by swearing to the truth of the same, and the plaintiff demurred to the plea as amended in abatement, which was joined by the defendants; and on the argument of the demurrer to the plea in abatement, the court decided that while the plea in abatement was pending all other pleas should be treated as a nullity, and permitted the defendants to withdraw their other pleas, and the court overruled the demurrer to the plea in abatement, to all of which the plaintiff excepted." "That on the trial of the case, the plaintiff offered the letters of administration granted by the judge of the county court of Pope county, in vacation, to the said *A. W. Lyon,* and the defendants objected because the letters were granted by the judge in vacation, and the court sustained the objection, and the plaintiff excepted. The plaintiff also "offered to introduce the judgment obtained in the Circuit Court of Washington county in favor of *A. W. Lyon,*

as administrator of the estate of Peter Hancock, deceased, against George Robinson, which was also rejected by the court," and the plaintiff excepted.

The plaintiff also assigns as error:

1st. That the court permitted a plea in abatement, and pleas to the merits, to be filed together, and at the same time.

2nd. That the court sustained a plea in abatement in defence, after pleas in bar had been filed to the merits of the action.

3rd. That the court permitted the defendants to amend their plea in abatement, after a demurrer thereto had been sustained.

4th. In overruling the demurrer to the amended plea in abatement filed by the defendants.

5th. In sustaining the plea in abatement, filed by the defendants, which only responded or applied to a part of the plaintiff's declaratoion.

6th. In declaring that, while a plea in abatement was pending, all other pleas should be treated as a nullity.

7th. That pending the demurrer to the amended plea in abatement, the court permitted the defendants to withdraw all their pleas to the merits, which had been previously filed in bar, and defend upon their plea in abatement.

8th. In rejecting and excluding the letters of administration offered in evidence by the plaintiff.

9th. In rejecting and excluding a judgment recovered by the plaintiff as administrator, &c., as set forth in the declaration, when offered in evidence by the plaintiff, showing that he had recovered the same judgment as such administrator upon which he had instituted this suit; and

10th. The general assignment that judgment was given for the defendants; whereas, by the law of the land, it ought to have been given for the plaintiff, against the defendants.

To which there is a joinder by the defendants.

Previously to examining the questions presented by the assignment of errors, and for the purpose of disincumbering the case of the most obvious inconsistencies appearing upon the face of the record; and presenting the points legitimately arising for adjudication in a view less confused, it may not be improper to declare the opinion of the court, in regard to such repugnancies and inconsistencies.

Shall the facts presented by the entries in the record, made and

LITTLE ROCK, Jan'y 1839

LYON vs. EVANS & OTHERS.

kept by the court, or those stated in the bill of exceptions, prevail when they are pointedly inconsistent with each other, as they appear in this case, is the question to be decided. The Circuit Courts are courts of record, and are required by law to make and keep a record of their proceedings in books provided for that purpose; which, by the uniform usage and practice in the courts of this country, from the time of its first organization as a territorial government, to the present period, now confirmed and enjoined by statutary regulations, are always publicly read in open court, and signed by the court, or judge presiding; and the records so made are required by law to be kept, by the clerk of the court, in his office, whole, safe and undefaced, as a perpetual and infallible memorial of the facts therein recorded. And the law attaches to them such uncontrolable and incontrovertible sanctity, that it will not suffer them to be in anywise controverted or denied, except upon the ground of fraud. And the court itself, after the term in which the proceedings are so recorded has passed by, loses all control over them, and is not permitted to change or alter them, except in cases where there appears to have been manifestly a misprision of the clerk, and then only to correct such misprision by a new entry in the record, which, in some cases, may be considered and taken to operate *nunc pro tunc.*

A bill of exceptions is founded upon some objection in point of law, to the opinion and direction of the court, upon a trial at law, either as to the competency of witnesses, the admissibility of evidence, or the legal effect of it, or for overruling a challenge or refusing a demurrer to evidence, and the like. *Tidd,* 786. The object of bills of exceptions is to preserve the evidence of facts, which, in the ordinary course of proceeding in the courts, would not otherwise appear of record in the case. The bill of exceptions must be tendered at the trial; for, if the party then acquiesce, he waives it, and shall not resort back to his exceptions, after a verdict against him, when, perhaps, if he had stood upon his exception, the other party had more evidence, and need not have put the cause on that point; not that it need be drawn up in form, but the substance must be reduced to writing, while the thing is transacting; because it is to become a record. *Tidd,* 788. And when the bill of exceptions is signed, the truth of the facts contained in it can never afterwards be disputed. *Tidd,* 790. It then becomes a part of the record and proceedings in the cause, and is emphatically a part of the record of the court, and as such, it is deemed in law to

be entitled to the same faith and credit; but it can only be so consid-
ered when the bill of exceptions contains in itself intrinsic evidence,
that the exception was taken and reserved while the thing was trans-
acting, or the matter excepted to was passing before the court, and that
it was reduced to form and signed by the judge or judges presiding in,
or holding the court, at some time during the term of the court, at
which the exception was taken and reserved; and no facts, other than
those transacting in the court, or properly before it when the excep-
tions were taken and reserved, can be legally the subject of an excep-
tion, or inserted in the bill of exceptions. It results, therefore, from
the nature and objects of bills of exceptions, that facts not excepted to
when they were transacting in the court, or not properly before the
court at the time the exception is taken, or over which the court has
no control at the time, although incorporated into the bill of excep-
tions, cannot be regarded as legally comprising part thereof, or as com-
posing any part of the record of the court; and consequently they are
not entitled by law to any credit, as facts appearing of record in the
cause.

By applying these tests to the bill of exceptions before us, it is man-
ifest that almost every fact therein stated must be considered as form-
ing no part of the record, and therefore be entirely disregarded.

This question being thus disposed of, we will proceed to examine
the questions presented by the record, and raised upon the assignment
of errors.

The first question to be decided is, whether the plea of *ne unques
administrator*, is properly a plea in abatement, or a plea in bar? In
the record it is styled a plea in abatement, and appears to have been
so considered and treated by the Circuit Court, and it is urged by the
plaintiff in error that this is its true character; but the plea appears in
the record, and we are at liberty to determine its character. In every
treatise on the subject of pleading to which we have had an opportu-
nity of referring, the plea of *ne unques administrator* is classed with
pleas in bar, and treated of as a plea belonging approprialely to that
class, and the effect thereof would not be, in the opinion of this court,
to suspend the plaintiff's right of action merely, but to defeat it abso-
lutely, by establishing the fact that he is not in fact the representative
of the intestate Hancock. And it is stated in 1*st Chitty's Pleading*,
434, to be a general rule, "that whenever the subject matter of the
plea or defence is, that the plaintiff cannot maintain any action, at

M

LITTLE
ROCK;
Jan'y 1839

LYON
vs.
EVANS
& Others.
any time in respect of the supposed cause of action, it may and usually should be pleaded in bar; but matter which merely defeats the present proceeding, and does not show that the plaintiff is forever concluded, should in general be pleaded in abatement: there are, however, some matters which may be pleaded in abatement, or in bar; but where the plaintiff's disability merely suspends the right of action, and does not destroy it, it can only be pleaded in abatement." Here *Lyon* sues in his representative character as administrator of the estate of Hancock, deceased, for causes of action, a part of which at least could only have accrued to him in that right. How then could he, at any time, maintain an action upon these causes of action, if he was not the administrator? And what better writ therefor could the defendants have given him, or the law permitted him to have? Certainly none. It follows, therefore, that if the plea did not set forth facts, which merely suspended his right of action, but destroyed it altogether, and if he could have no better writ therefor, it must, whenever it commences and concludes in bar, be regarded as a plea in bar, and not as a plea in abatement. And it has been held that where the action is by an administrator, stating a grant of administration from a bishop, of a peculiar diocese, a plea of *bona notabilia* should be in bar, and not in abatement; because it shows that the plaintiff has no right to sue at all in the character of administrator. 1 *Saund.* 274, n. 3; 1 *Chitty*, 446.

The general rule which prevails in pleading is, that a mere prayer of judgment, without pointing out the appropriate judgment, is sufficient; because, the facts being shown, the court are bound to pronounce the proper judgment; and upon that principle it has been held that if a plea which contains matter in bar of an action, conclude in abatement, it is a plea in bar, and final judgment shall be given upon it; for if the plaintiff have no cause of action, he can have no writ, notwithstanding the conclusion. 1 *Chitty*, 446.

But it has also been held, according to the maxim, *conclusio facit placitum*, that the class and character of a plea depend upon its formular parts; and therefore if a plea commence and conclude as in abatement, and show matter in bar, it is a plea in abatement, and not in bar, the commencement and conclusion being in such form as to indicate the view in which it is pleaded, and to mark its object and tendency, as being either to the jurisdiction, in suspension, in abatement, or in bar. And upon this principle, Lord Holt, in the case of *Medina* vs. *Stoughton*, 1 *Ld. Raym.* 593, laid it down as a

rule that "if a man pleads matter which goes in bar, but begins and concludes his plea in abatement, it will be a plea in abatement; but if he begins in bar, though he concludes in abatement, or concludes in bar, though he begins in abatement, it will be a plea in bar." And in conformity to the first part of this rule, the case of *Godson* vs. *Good*, 6 *Taunt*. 587, was decided. There the action was against the defendant as administratrix of her husband, on a contract entered into by him; her plea began and concluded in abatement: the substance of it was in bar, viz: that the intestate made the supposed contract jointly with others, (naming them,) who were yet living, and so the action survived against them. The plaintiff took issue on this, and at the trial it appeared that the contract was in fact joint; but that others besides those named by the defendant in her plea joined in it, and were alive. If, then, the plea was to be considered as one in abatement, such proof was an answer to it, because the plea has failed to give the plaintiff a better writ; for if he had sued out a writ according to the plea, he might have been again foiled by another plea in abatement; and accordingly, as the court on the authority of the above case, held the plea, a plea in abatement, the rule to enter a verdict for the defendant was discharged. This appears, therefore, to be the settled rule, and we are not aware of any decision in direct conflict with the rule, although principles sometimes stated in the books appear rather to militate against it. We feel therefore bound to consider the amended plea of *ne unques administrator*, as pleaded in this case, a plea in abatement, notwithstanding the facts stated in the plea is matter in bar.

Having thus ascertained the character of the plea, the next question presented by the record and assignment of errors, is, whether the several causes of action set out in the declaration are such as may be joined in the same action by the administrator. On the part of the plaintiff in error, it is contended that the plea purports to answer the whole declaration, when it is only responsive to a part thereof; the cause of action set forth in the third assignment of a breach in the declaration being for an escape out of the sheriff's custody, on an execution issued on a judgment recovered by *Lyon* in his representative capacity after the death of Hancock, upon which he could sue without naming himself administrator; and therefore the plea is no answer to that part of the declaration, and the issue thereupon joined is immaterial. And on the part of the defendants, it is insisted that if the plea

LITTLE
ROCK,
Jan'y 1839

LYON
vs.
EVANS
& OTHERS.

does not answer the whole declaration, causes of action are joined therein, which cannot by law be joined in the same action; and therefore the plaintiff, having committed the first error, which is fatal to his action, cannot complain of the insufficiency of the plea.

To determine these questions, it is necessary to ascertain what cause of action may be joined, when the suit is brought by an executor, or administrator as such. The rule first laid down in the case of *Bull* vs. *Palmer*, 2 *Lev.* 165, "That whenever the money when recovered would be assitts the counts may be joined," was, by a series of decisions, subsequently made in the courts of England, for a time, greatly shaken, if not entirely overthrown; and it was held in the cases of *Herreden* vs. *Palmer*, Hob. 88; *Rogers* vs. *Cook*, 1 *Salk.* 10; *Bettes* vs. *Witchett*, 10 *Mod.* 316; *Hosier* vs. *Lord Arundel*, 3 *Bos. & Pul.* 7; and *Nicholas* vs. *Killigrew*, 1 *Ld. Raym.* 437, "That money received to the use of an executor after the death of the testator, gives a different cause of action to the executor, from that which accrued to the testator by the receipt of the money in his lifetime; that in the latter case the executor must necessarily sue as such, and is not liable to cost if he fail in the action; but in the former case, he need not sue as executor, but may bring the action in his own name: and if he does sue as executor, he is liable to costs as any other person is."

But this rule, like that in the case of *Bull* vs. *Palmer*, was doomed to have but a temporary existence; and upon much consideration has been overruled by the same courts which established it, and the former rule, as laid down in the case of *Bull* vs. *Palmer*, has been established, and, by a series of more modern decisions, is declared to be the true rule, and appears to be at this time the settled law in England. See *Ord* vs. *Fenwick*, 3 *East.* 104; *Foxwist* vs. *Fremaine*, 2 *Saund. Rep.* 207; *Cowell* vs. *Watts*, 6 *East.* 405; *King* vs. *Thorn*, 1 *T. R.* 487; *Partridge* vs. *Court*, 5 *Price*, 412; *Court* vs. *Partridge*, 7 *Price*, 591; *Catherwood* vs. *Chaband*, 1 *Barn. & Cross*, 150; *Thompson* vs. *Stent*, 1 *Taunt.* 322; *Powley* vs. *Newton*, 6 *Taunt.* 453; 2 *Saund. Rep.* 117, *d. h. (e.)* *. But it must be stated in the count that the duty accrued to the plaintiff in his representative capacity of executor or administrator. It is not enough to say that it accrued to him, *executor* or *being executor*, it must be averred that it accrued to him *as executor* or *as administrator*; and therefore in the case of *Henshall* vs. *Roberts*, 5 *East.* 150, where a count, upon an account stated with the plaintiff, *executrix*,

---

* See note *A.* at end of case.

(not saying *as* executrix,) was joined with a count on a promise to the testator, it was held in error, after a judgment by nil dicit; and a writ of enquiry and final judgment that those two counts could not be joined, although it was urged that by necessary implication, where the parties to whom the promise was alleged to be made, named themselves "executrix and executors," it must be taken to have been made to them in their representative capacity, and meant the same as if it had been said "as executrix," &c., more especially when it is said " executrix, &c., as aforesaid," which refers to the antecedent counts, in which it was admitted they sued in their representative character. But to this argument Ld. ELLENBOROUGH, C. J. answered, "we cannot import any thing from the other counts, we must look to this upon the account stated, and see whether it can be joined with the rest;" and the court held that there was no allegation of their suing in their representative character, and that nothing could be supplied by intendment, and for the misjoinder adjudged the decaration bad.

This question was incidently discussed in the case of *Brown* vs. *Hicks*, decided by this court at the last term; and it was then held that in actions by or against executors or administrators in their representative character, the allegation that the duty accrued to, or against them "as executors," or " as administrators," was essential in the pleading, to fix and determine the character in which they were sued or suing. And when there is no such allegation, they must be regarded as being sued, or suing in their private, individual character, and not *as executor* or *as administrator;* and this, from the authorities then cited, appears to be the settled rule.

In the case before us, the first breach assigned shows a cause of action which accrued to the plaintiff's intestate in his lifetime; and in the second breach assigned, it is expressly stated that the defendant *Evans*, as sheriff of Washington county "contriving and intending to wrong the said *A. W. Lyon*, administrator of the estate of Peter Hancock, deceased, and to delay and hinder him from the recovery of his said debt *as administrator as aforesaid*," permitted a certain George Robinson to escape and go at large out of his custody after he had been arrested, and held in custody by him, on a capias ad respondendum issued out by the plaintiff's intestate against him, without taking any bail, &c.; clearly showing the arrest to have been made in the lifetime, and the escape to have taken place after the death of the plaintiff's intestate; but the third breach assigned wholly fails to state that

LITTLE
ROCK,
Jan'y 1839

LYON
*vs.*
EVANS
& OTHERS.

LITTLE
ROCK,

Jan'y 1839

LYON
*vs.*
EVANS
& OTHERS.

the judgment therein mentioned was recovered by the plaintiff as administrator, or that it was founded on any debt or duty to Hancock in his lifetime, or any liability which had accrued to the plaintiff *as administrator* of the Estate of Hancock after his death, or that it was. not for some debt or liability which had accrued to the plaintiff in his private, individual character; but it is therein simply alleged, "that *A. W. Lyon*, administrator of the Estate of Peter Hancock, heretofore, to wit, on the 7th day of June, in the year A. D. 1831, in the circuit court in and for said county of Washington, by the consideration and judgment of the same court recovered," &c. $271, and also the sum of thirty-six dollars and sixty-four cents, which were adjudged to the said *A. W. Lyon*, administrator as ,aforesaid, for his costs," &c., giving to the plaintiff throughout the said third breach assigned, the description of "*A. W. Lyon*, administrator as aforesaid," therefore this assignment of a breach comes expressly within the rule adjudged by the court of king's bench in the case of *Cowell & wife, adm'x. &c.* vs. *Watts,* before recited, and by this court in the case of *Brown* vs. *Hicks;* and the cause of action therein stated, must be considered as belonging to the plaintiff in his private, individual right, and not as administrator of the Estate of Hancock, deceased.

It is, therefore, expressly within the rule established, in the case of *Henshall* vs. *Roberts,* 5 *East.* 150, before recited, and unless there is something in the case which exempts it from the operation of that rule, the misjoinder will be fatal to the declaration.

The action is prosecuted in the name of the Governor, by, and for the use and benefit of *Lyon,* in his representative character, as administrator of the Estate of Hancock, by virtue of the statute which provides that the sheriff's official bond "may be sued on from time to time, for the use of any person who may think himself, herself, or themselves aggrieved; *Provided,* however, that the person or persons, at whose instance suit shall be commenced as aforesaid, shall be liable for payment of costs as plaintiffs in all other cases, *Ark's Dig. p.* 518; and several breaches are assigned in the declaration in pursuance, and under the provisions of the act of 1831, *Ark's Dig. p.* 348, *sec.* 95, which declares that " in all actions upon any bond, or on any penal sum for non-performance of covenants and agreements in any indenture, deed, or writing contained, the plaintiff or plaintiffs may assign as many breaches as he or they shall think fit." This latter act, though not a literal copy, contains in most respects, substantially the same provisions as the act of 8 and 9

*W.* 3, *C.* 11, *S.* 8, and the decisions upon that statute are nearly all applicable to this: upon that statute it has been held that the provisions thereof are compulsory on the plaintiff to assign or suggest breaches, and if they are not assigned in cases within the statute, the plaintiff cannot recover; and unless the condition and breach appear on the record, the proceedings will be erroneous, 5 *T. R.* 636, 538; 2 *Wils.* 377, and such we apprehend would be the legal and legitimate operation of said act of 1831, which also further provides that "the jury upon the trial of such action or actions shall and may assess damages for each of the breaches that the plaintiff shall prove to have been broken," thereby plainly showing that the cause of action set forth in the breaches assigned, are to be considered as the gravamen, or real foundation of the recovery: and therefore, in cases situated as the present, where the bond on which the suit is instituted, is payable to the governor, who holds the legal interest therein, in his official character only, merely as a naked trust, without any beneficiary interest whatever, exclusively for the benefit of all such persons as may be interested in, and damnified by a breach of the condition; to whom, and to no others, a right of action thereupon is given by the statute; and hence, there appears to be in such cases, a peculiar fitness and propriety in the rule; because the interest of those by whom and for whose use the suit is prosecuted, (who are in every respect regarded by the statute as the real plaintiffs in the action,) in the performance of the condition, or the injury resulting to them from the non-performance thereof does not appear, until some special breach is assigned, and such interest and damages specially shown; therefore, of necessity, every breach thus assigned, must state the facts upon which the plaintiff's right of action depends, with as much precision and certainty as is required in the several counts of a declaration.

Wherefore, we are of opinion, that the breaches assigned under the statute, must have all of the essential requisites of so many different counts in the same declaration; and in this respect, it makes no difference whether they are assigned at first in the declaration, or subsequently in the replication, or on the record. They appear in every point of view designed to answer the same purposes only, for which several different counts are introduced in other cases, where the form and order of proceeding is different; we do not, therefore, perceive any substantial reason why they should receive a different consideration, or be excepted out of the general rule, as to the joinder of differ-

LITTLE ROCK, Jan'y 1839

LYON vs. EVANS & OTHERS.

ent and distinct rights or causes of action in several counts, or in a single count of the same declaration, and this we understand to be in effect, the principle decided in the case of *Kingston* vs. *Nottle*, 1 *M. & S.* 355, where it is held that " where there is a misjoinder, either of parties or causes of action, *or breaches, the demurrer must be to the whole.*" And the plaintiff cannot, if the declaration be demurred to, aid the mistake by entering a nolle prosequi, so as to prevent the operation of the demurrer, and however perfect, the counts may respectively be in themselves, the declaration will be bad on a general demurrer, or in arrest of judgment, or upon error, 1 *Ch. Pl.* 206.

From this view of the case it results, that the plea of *ne unques administrator*, is no answer to the plaintiff's right of action, claimed in the third breach, and claiming as it does to answer the whole declaration, is therefore, entirely invalid as to any part thereof, and ought to have been held insufficient on the plaintiff's demurrer. But that question, so far as it depends on the judgment or the demurrer, is waived by the plaintiff himself, by replying to the plea, and tendering an issue of fact thereupon, after his demurrer was overruled, and he is now, by the well settled rules of law, precluded from assigning the error in that judgment upon his demurrer, as a ground for reversing the final judgment against him in the cause, yet the issue found thereupon is immaterial, upon the same principle that the plea itself is vicious, that is, because it professes to decide the whole action, a part of which is not in any manner affected by it; and consequently it cannot be the foundation of any valid legal judgment in favor of either party, because if found for either, the plaintiff's right to recover on the third breach assigned remains undetermined, and the court is left in doubt as to the party in whose favor the judgment ought to be given; the court, therefore, instead of rendering a final judgment on the verdict, as the case then stood before it, ought to have awarded a repleader, notwithstanding the defect in the declaration, and for this error the judgment must be reversed.

And although the plaintiff committed the first error, for which his declaration ought to have been judged insufficient on his demurrer to the defendant's second plea, which was a plea in bar, and judgment thereupon given for the defendants, if the plaintiff declined withdrawing his demurrer, and amending his declaration; yet, as it was not so determined, and no objection appears to have been made to the declaration by the defendants, and as the defendants were afterwards permitted by

the court, to file their amended plea of *ne unques* administrator, in abatement, (after they had filed pleas in bar, to one of which the plaintiff had demurred, and his demurrer had been overruled,) contrary to the long established and well settled order of pleading, which therefore the plaintiff might legally have disregarded, and treated as a nullity, if he had desired to do so; if he had not been precluded from adopting this course by the decision of the court, "that while the plea in abatement was pending all other pleas should be treated as a nullity," which, together with the permission granted the defendants, to withdraw all their pleas in bar, which were accordingly withdrawn, left in fact no valid defence in the case.

These circumstances, although the plaintiff is, by his own acts and situation, precluded from assigning them as error, together with the provisions of the statute of 1807, *Ark's Dig. p.* 333, *S.* 58, which declares that "when a judgment is arrested the plaintiff shall not be obliged to bring a new suit, provided the first writ be sufficient, but the court may order new pleadings to commence where the error causing the arrest began," furnish, in the opinion of the court, a sufficient reason why the general rule that the judgment must be affirmed, notwithstanding the error in the record, when the party claiming the reversal thereof, committed the first error, which is fatal to his case, although judgment is afterwards given against him, upon other grounds, which are altogether erroneous, ought not to govern the decision of this case, if indeed it can be considered as coming within the rule.— But we think it does not strictly fall within this, or any other rule by which the judgment ought to be affirmed. The case is not one in which the proceedings on the part of the plaintiff are so entirely defective and erroneous, that the judgment against him would not bar another action, properly brought for the same cause; if they were so defective the judgment should be affirmed; but when such consequences would result to the plaintiff: to affirm the judgment, founded upon an immaterial issue, produced by the misdirection and wrong judgment and opinions of the court upon the pleadings, for the error of the plaintiff in joining in his declaration causes of action which cannot by law be joined in the form therein stated, which appear to have passed unheeded by the defendants and the court, cannot, in our opinion, be correct. (See note *B.*)

The case being thus disposed of, the court deems it wholly unnecessary to express any opinion as to the other points made in the as-

N

LITTLE
ROCK,
Jan'y 1839

LYON
vs.
EVANS
& Others.

signment of errors, or presented by the record. And it may be proper to add, that we would be distinctly understood as not deciding any thing in regard to the question whether the judgment mentioned in the third special breach is or is not such a right or cause of action as may, by proper averments in the pleadings, be joined in the same action with those stated in other breaches; that question not being presented by the pleadings as they appear in the record before us.

Wherefore, upon the whole case, it is the opinion of this court, that the judgment of the Circuit Court of Washington county ought to be, and the same is hereby reversed, annulled, and set aside with costs; and that a repleader ought to be, and is hereby awarded, to commence with the declaration, where the first error appears to have been committed, the writ being sufficient; therefore the plaintiff, if he shall shall ask leave for that purpose, must be permitted to amend his declaration, so as to cure the defect therein, arising from the misjoinder of causes of action therein, which cannot by law be joined, and in such other respects as may be proper; but if no such leave be asked the suit must be dismissed. And that this case be, and the same is hereby remanded to said Circuit Court for further proceedings to be had therein according to law, and not inconsistent with this opinion.

## Note A.

The rule laid down in the text is undoubtedly settled by authority, but I would venture to suggest, with great difidence, that perhaps it is not in itself sufficiently definite. It is, that where there are several causes of action accruing to an executor or administrator, and the money when recovered *would be assets*, they may be joined, in a suit by him as executor or administrator. Yet would not the question arise—"in what cases would the money when recovered be assets?" In order to restore this last question, I have thought it might not be unacceptable to review the cases quoted in the text, as well as others bearing upon the subject, and extract from them the rule, if there be any upon that point.

I would remark, though with much deference, that the case of *Bull vs. Palmer*, is not stated in the text with complete accuracy, though the same doctrine might be deduced from it. It was assumpsit: plaintiff declares that debt accounted with him, being executor to *J. S.* as executor, upon which account so much was due, and he promised to pay it. Upon *non assumpsit*, the plaintiff was nonsuit, and the question was, if he should pay costs? *Wylebe* held he should pay costs, because he does not sue as executor, nor produce the will, but founds the action upon an account with himself. *Rainsford*, chief

justice, *Tuysden* and *Jones*, justices *contra:* for the action is in the right of his executorship, and the money recovered will be the assets ; and they gave judgment accordingly.

It will be seen by the above statement of the case, as it is reported in 2 *Levine*, 165, that there was no question or rule as to joinder of counts, though the doctrine inferred in the text may well be, deduced from the decision.

The case of *Herreden* vs. *Palmer*, *Hob.* 88, is also different from what is above stated in the text—and does not conflict with the case of *Bull* vs. *Palmer*, nor has it in later days been overruled. *Herreden* brought assumpsit against *Margaret Palmer*, administratrix of her husband, and declared that her husband had bought of him gold and silver and pearl, and was indebted unto him for them 200 pounds, and she, after his death, had likewise bought of him pearl, for 27 pounds, and that upon accompt she was found indebted both these sums unto him, and promised payment. Judgment for pl. and assigned for error, that the defendant was to be charged in two manners, one in her own right, and the other as administratrix; and therefore the judgment was reversed. The principle here decided is sustained in *Jennings* vs. *Newman*, 4 *T. R.* 347; *Rose* vs. *Bowler*, 1 *H. Bla.* 108; *Brigden* vs. *Parkes*, 2 *Bos. & Pul.* 424; *Myer* vs. *Cole*, 12 *J. R.* 349; and *Wigley* vs. *Ashton*, 3 *B. & A.* 101.

The case of *Rogers* vs. *Cook*, 1 *Salk.* 10, does not, it is respectfully conceived, conflict with the case of *Bull* vs. *Palmer*, nor has it been overruled. It was a suit brought by *Rogers* as administrator. He declares on an indebtatris assumpsit to the intestate, and a second count on an *insimul computasset* between the *plaintiff* and *defendant* for money due the plaintiff *himself.* Upon demurrer the declaration was holden bad—and the reason given is, " for the plaintiff in one action cannot prosecute *his own right* and another—because the costs to be recovered are entire, and then the plaintiff can never distinguish how much he is to have as administrator, and how much he is to hold as his own." It will be seen that this decision in no way conflicts with that in *Bull* vs. *Palmer*, nor does it bear upon the question discussed in the text.— The same case will also be found in 1 *Shower*, 366, where it is stated as in *Salkeld.* It is sustained by *Hooker, extr'x.* vs. *Quilter*, 1 *Wils.* 171; and S. C. as *Hookin* vs. *Quilter*, 2 *Str.* 1271.

The case of *Hosier et al.* extrs. vs. *Lord Arundel*, 3 *Bos. & Pul.* 7 was decided in 1802, subsequent to *Ring et al.* extrs. vs. *Thorn* and *Foxwist* vs. *Fremaine.* The case of *Hosier et al.* extrs. vs. *Arundel*, was an action in two bonds, one to the plaintiffs' testator, and the other to the plaintiffs as executors. There was a demurrer to the declaration, and the case of *Ring et al.* extrs. vs. *Thorn* was cited against the demurrer, which was a case where the first count was on a bill of exchange, endorsed to the plaintiffs, who were surviving executors of Stevenson, in right of the plaintiffs, as surviving executors as aforesaid : the second count was for money had and received by the defendant to the use of the plaintiffs as executors; and the third on an account stated with the plaintiffs as executors ; in which case the action was supported ; and BUTLER said, that " it is clear that a plaintiff cannot join two counts, one on a debt to himself, and another to him in the character of executor "— but that " the only question is whether the sum, when recovered, will be considered as assets of the testator."

The correctness of this decision was admitted in *Hosier* vs. *Arundel*, but ALVANLEY, C. J. said that if the executor to whom a bond was given as executor, were to die before the debt due on such bond was recovered, the administrator *de bonis non* would not be able to put that bond in suit. It would go to the administrator of the executor. ROOKE, *Judge*, said that this case fell within the words used by BUTLER in *Ring* vs. *Thorn*, to wit—" it is clear that the plaintiff cannot join two counts, one on a debt to himself, and another to him in the character of executor ;" and CHAMBRE, Judge, said " if executors take a note or bond from a debtor to the estate of their testator, the old debt is thereby extinguished, and a new one created, which must be declared upon as such." And he referred to the cases of *Bettes* vs. *Mitchell* and *Rogers* vs. *Cook*, as in point. The case of *Bettes* vs. *Mitchell*, 10 *Mod.* 315, was

on several premises made to the *testator*, and a promissory note to the executor, *ut executori*, and the court decided that the latter could not be joined with the former.

The case of *Nicholas, adm.* vs. *Killigrew*, 1 *Ld. Raym.* 437, was *indebitatus assumpsit*, and the plaintiff declared for so much money due to the intestate, paid to the defendant after the death of the intestate, to the use of the plaintiff his administrator. The pl. was nonsuit, and the question was, as in *Bull* vs. *Palmer*, if he should pay costs. But remark that here the action was not, as in *Bull* vs. *Palmer*, *against a debtor to the testator, but against a third* person who had received the money *from the debtor*, after the testator's death, and to the administrator's use. TREBY, C. J. said, and POWELL, *Justice*, agreed with him, that "if A be indebted to the intestate before his death, and after his death A pays the same to B, by direction of the administrator, there the administrator may sue B without naming himself administrator, and though he does name himself administrator, it is void, and he must pay costs, if the action be found against him." Why? Because, by directing the money to be paid to a third person, he has become responsible to the estate for it, and it is already reduced into assets. The court said further—" or if A pay it to B to the use of the administrator without his direction, yet the administrator *may* have an action against B in his own name, and he shall pay costs. *But* in such case he hath election, to bring an action against B or A, *the first debtor* —and if he brings it against A it must be *as administrator*, and he shall not pay costs. For in all cases where an executor or administrator sues for a debt or other thing belonging to the testator, &c. and grounds his action upon the same contract that was to the testator, he shall not pay costs if he fail in the suit; but if he grounds his action upon a contract expressed, or by implication and operation of law, which accrues to him after the death of the testator, there the action lies in his own name, and the naming executor, &c. is void, and he shall pay costs." So far as this decision applied to the case then before the court, it is undoubtedly law at the present day, though the *obiter dicta* are not.

The rule in *Bull* vs. *Palmer* does not appear, therefore, to have been shaken by any of the cases referred to in the text, except *Hosier* vs. *Arundel*, and *Bettes* vs. *Mitchell:* and the decision in *Hosier* vs. *Arundel* is subsequent to some of the cases which are said to have overruled it. And this case, and that of *Bettes* vs. *Mitchell*, which are said in the text to have been overruled by the cases there cited, and among them by *Ord* vs. *Fenwick*, 3 *East*. 104, *were expressly sustained by* Lord ELLENBOROUGH, in that case. The case of *Bettes* vs. *Mitchell* being cited, that eminent judge said—" There the security itself was created after the death of the testator, and therefore the executor must have sued upon it *in his own right*, whatever the original consideration might have been."

The decision in *Ord* vs. *Fenwick* was, that where there was a count in assumpsit to the plaintiff *as executrix*, for money *paid* by her to the defendant's use, it might be joined with a count on promises to the testator—and the court assigned as a reason, that "*non constat* but she might have been compelled to pay the money upon an obligation by the testator as security for the defendant, and then the law would raise an assumpsit in him *to reimburse the estate*, and the money recovered by the executrix would be assets. The court was referred to the case of *Ring* vs. *Thorn*, 1 *T. R.* 489, and *Cockerill* vs. *Rynaston*, 4 *T. R.* 277, as establishing the rule that the only question was, "whether the sum when recovered would be assets;" and seemed to recognize it. *Ord* vs. *Fenwick* is supported by *Mowry* vs. *Adams*, 11 *Mass.* 327, and *Williams* vs. *Moore*, 9 *Pick*. 432.

In *Ring* vs. *Thorn*, it was decided, that where the endorser of a bill of exchange was indebted to the testator, and endorsed a bill to pay the debt, to the plaintiffs *as executors*, they could sue him in their representative character —and BUTLER said the only question was, whether the sum would be assets.

And in *Cockerill* vs. *Rynaston*, which was trover, Justice BUTLER said that though the conversion was made after the testator's death, yet it was a cause of action which accrued to the executrix, *as executrix*, if she never had pos-

session of the goods, and these goods when recovered would be assets, and so she must sue in her representative capacity. And the same decision had been previously made in *Mason* vs. *Jackson*, 3 *Lev.* 60, which is usually referred to as establishing the same rule which is laid down in *Bull* vs. *Palmer*.

But in *Bollard* vs. *Spencer*, 7 *T. R.* 354, Lord Renyon said that there must have been some mistake in *Cockerill* vs. *Rynaston*, and declared the law to be, that where the conversion was in the time of the administratrix, she could not sue as such, but must sue in her own right.

In the case of *Foxwist* vs. *Fremaine*, 2 *Saund.* 212, the point discussed in the text was not raised. The only points rais. in that case were, whether infant executors should be joined in an action ; and whether, if so, they should sue by attorney.

In *Cowell* vs. *Watts*. 6 *East.* 409, which was an action of assumpsit, with one count upon a promise to the plaintiff as administratrix, and one upon an account stated with her as administratrix, Lord Ellenborough, and the whole court held that the counts might be joined ; and the test was declared to be, whether the sum when recovered would be assets.

LAWRENCE, *Judge*, said—"The reason why an executor suing in his representative character shall not be liable to costs if he fail, is, because he is supposed not to be cognizant of the contracts made by his testator ; but as he must be cognizant of all contracts made by himself personally, though in his representative character, and as he might declare upon them in his own right, there is reason why he should not be exempt from costs in case he fail in his action.

The case of *Partridge & Wife*, *admtrx*. to some extent overruled the case of *Bettes* vs. *Mitchell*, and *Hosier* vs. *Arundel*, and decided, that counts, or promises to an intestate, may be joined, in declaration by an administrator, in assumpsit, with counts on *promissory notes* given to the plaintiff *as administrator*, because the amount, when recovered, would be assets in the hands of the administrator. But it was admitted, that if a *bond*, or other higher security had been given, it would be different, *because* the effect of such new and higher security would be an extinction of the simple contract debt. *Partridge et ux, adm'x* vs. *Court*, 5 *Price Exch. R.* 412.

In *Thompson* vs. *Stent*, there was a count on account stated with plaintiff as executor, and one for goods sold by testator. It was decided that they might be joined, because the money recovered would be assets. 1 *Taun.* 322, and *Secar* vs. *Atkinson*, 1 *H. Bla.* 102, was of the same nature.

The case of *Rowley et al. extrs*. vs. *Newton*, 6 *Taun.* 453, was on counts upon notes given the testator, and an account stated with the plaintiff as executors: and the rule was laid down as by BUTLER, *Judge*, in *Ring* vs. *Thorn*.

In 7 *Price* 591, the judgment in *Partridge et ux, adm.* vs. *Court*, *Price*, 412, was affirmed. And see *Fry* vs. *Evans*, 3 *Wendell*, 530.

*Catherwood* vs. *Chabond*, 1 *B. & C.* 150, was a suit by the administrator *de bonis non*, on a *bill of exchange* endorsed to the original administratrix, as administratrix ; and the rule was laid down by all the judges : by ATBETT C. J. that an administrator may sue *as such*, under a *promise* made to him in his representative character: by BAYLEY, *Judge*, that an administrator may sue *as such*, upon *promises* made to himself, where the money will be assets when recovered : and by BOLROYD, *Judge*, that the older cases have received a qualification, and are not now to be considered law *to their full extent*.

These authorities show the law to be settled in England, that where the executor takes a *bond* to himself *as executor*, for a debt originally due the testator, he cannot sue on it *as executor*, but must sue on it in his own name ; but where he takes a *promissory note*, it is different, and the reason as appears in 5 *Price*, 412, is, that the note is not a security of a higher nature than the simple contract debt—it does not extinguish the simple contract debt, and it is only a different kind of evidence taken in order to prove the same debt. It is therefore suggested whether, in this state, where a note may be the *foundation* of an action, where its execution can only be denied by plea under oath, and where bonds and notes are placed in many respects on the same footing, the law would not be the same with regard to a note taken by the executor, as with regard to a bond.

LITTLE ROCK,
Jan'y 1839

LYON
vs.
EVANS
& OTHERS.

I would therefore suggest, as before with great deference, that the rule laid down in the text needs some explanation or restriction. For the same question, *in fact*, arises under the rule, when are moneys recovered assets? The rule would therefore seem to be, *that whenever the executor takes a security of a higher nature, he becomes responsible for the debt—and if he sue upon the higher security taken, the money recovered is not assets, and he must sue on it in his own name, and not as executor.*

In *Baker* vs. *Baker and Cook*, 4 *Bibb*, 346, the Supreme Court of Kentucky said that where a note was given to the plaintiffs below, executors, &c. yet their being styled executors could only operate as a *descriptio personarum:* for as the note was given to them, and not to their testator, they could only maintain the action in their own right; and this case can only be reconciled with *Partridge* vs. *Court*, upon the ground that a note is in Kentucky, as in this State, a higher and different evidence of the debt, than the pre-existing verbal contract, as well as the *foundation* of an action like a bond.

## Note B.

May it not be doubted whether the awarding a repleader and refusing to affirm the judgment in this case, is not contrary to established principles?

One rule with regard to repleader is stated to be, "That a repleader will never be awarded, for faults in the issue, when it is apparent *that no useful end* can be attained by so doing. *Gould Pl.* 513—that is, where the party cannot amend his pleadings so as to make them good, without *substantially* changing them—because if there is a plea or declaration bad in substance, the cause must be finally decided upon it.

In *Rex* vs. *Phillips*, 1 *Str.* 397, the *Chief Justice* said—"We are moved on behalf of the defendant, that we will grant a repleader : now consider that if we should grant it, the defendant cannot mend his case ; *for the plea* will stand, and *after the formality of a demurrer*, we must give judgment upon the goodness or badness of the plea.

So in *Clears* vs. *Stevens*, 8 *Taunton*, 420, the plea omitted a material fact, necessary to make a full defence, and GIBBS, C. J. said, "it is true that the defendant in his replication, selects an immaterial fact, and takes issue thereon, but an immaterial issue taken on a bad plea will not make that plea good ;" and the court refused a repleader on that issue.

The rule is further laid down—that "if the declaration is good, the plea in bar totally void of substance, and issue joined on any part or the whole of the plea, and verdict for the plaintiff ; he is entitled to judgment—as no possible issue tendered on such a plea or the matter of it, in whatever manner alleged, could decide the merits of the case. *Gould. Pl.* 513 ; *Jones* vs. *Bodinham*, 1 *Salk.* 173.

So in *Crane* vs. *Newell*, 2 *Pick.* 614, it was held that a repleader would not be awarded, where the facts stated in the plea were not a sufficient bar to the action.

Furthermore it is laid down—that "if there be a *radical* defect in any of the previous stages of the pleadings ; and if the *first* defect of this kind, is on the part of him who moves in arrest of judgment, the motion cannot prevail. *Gould*, 516 ; *Kempe* vs. *Crewes*, 1 *Lord Raym.* 170 ; *Foster* vs. *Jackson*, *Hob.* 56 *and note; Tasker* vs. *Salter*, *Hob.* 113; *Brickhead* vs. *Arch. of York*, *Hob.* 199.

So in *Harrison* vs. *F. and M. Bank of Logan*, 4 *Lit.* 275, the court said— "It is an established rule, that a repleader is never awarded at the instance of him who has committed the fault."

So in *Gerrish* vs. *Train*, 3 *Pick.* 124, the same rule was laid down in almost the same words. See *Kiotley* vs. *Deck*, 3 *Hen. and Mun.* 388 ; *Hammett* vs. *Bullitt*, 1 *Call*, 567 ; *Kerr* vs. *Dixon*, 2 *Call*, 379.

The case in the text falls, it is respectfully believed, within the very letter, as well as reason of the rule. The first defect is in the declaration—it is a

LITTLE
ROCK,
Jan'y 1839

LYON
*vs.*
EVANS
& OTHERS.

*radical* defect—fatal on error or in arrest of judgment—a misjoinder of counts, in one of which the plaintiff is decided to sue in his own right ; and therefore the declaration cannot be amended, without changing the nature of the demand, and bringing forward a new case.

But there is a more weighty objection still. In *Witts* vs. *Polehampton*, 3 *Salk.* 305, *Hort*, C. J. said that "a repleader *was never yet allowed after a demurrer*—so it was reported by Mr. *Lutch*, (147) but since his time it hath never been allowed." And again—"since this last case, (*Stephens* vs. *Cooper*, 3 *Lev.* 440), it hath been ruled that a repleader can never be awarded after a *demurrer*, nor after a *writ of error*, but only after issue joined. The same decision is found *Crosse* vs. *Bilson*, 6 *Mod.* 102; 2 *Reble*, 769, 789, 225, 2 *Saund.* 319, *b.* (*n.* 6.)

So in *Holbech* vs. *Bennett*, 2 *Lev.* 12, HALE, C. J. said "The court cannot at this day award a repleader upon a writ of error, if they reverse the judgment, as was used anciently. This cause has been discused for above these hundred years, and cannot be practised now."

And this is equally the case at this day, and in this country. Justice STORY, in the *United States* vs. *Burnham*, 1 *Mason*, 66, which was a case brought by writ of error from the District Court of Massachusetts to the Circuit Court, says, "If this were a case originally depending in this court, a repleader might perhaps have been proper to be awarded; for, although in general, a repleader is not grantable in form of the person, who made the first fault in pleading, nor where the court can give judgment upon the whole record ; yet if it appear that substantial justice will not otherwise be done, the court might otherwise award it. But this court sits in this cause as a court of error, and although the practice was anciently otherwise, a repleader is now never awarded by a court of error."

If this be, as it is with deference believed, it is the true doctrine upon the subject, it is most assuredly not changed by the statute quoted in the text, which allows a repleader *after arrest of judgment.*

So in *Wells* vs. *Lain*, 15 *Wend.* 102, it is stated by the chancellor, that "no repleader can be awarded upon a writ of error, where it has not been asked for in the court below."